IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| LAQUON O. BAILEY, ) | |
| ) | |
| Plaintiff; ) | |
| ) | |
| vs. ) | |
| ) | 5:11-cv-3583-LSC |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OF OPINION**

**I.   Introduction.**

The plaintiff, Laquon O. Bailey ("Bailey" or "Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Bailey timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Bailey was twenty eight years old at the time of the Administrative Law Judge's ("ALJ") decision (Tr. at 158), and he has a tenth grade education. (*Id*. at 201.) His

past work experiences include employment as a hospital housekeeper and janitor. (*Id.* at 188–195.) Bailey claims that he became disabled on July 15, 2007, due to several gunshot wounds to his lower extremity. (*Id.* at 154, 158.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. § 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Bailey met the nondisability requirements for a period of disability and DIB and was insured through September 30, 2010. (Tr. at 99.) He further determined that Bailey had not engaged in substantial gainful activity since July 15, 2007, the alleged onset of his disability. (*Id.*) The ALJ stated that Plaintiff had the following impairments which are considered

"severe" based on the requirements set forth in the regulations: "multiple gunshot wounds in July 2007 to the scrotum, right lower extremity and left lower extremity and a gunshot wound in March 2009 to the abdomen through and through the right kidney and through and through the right lobe of the liver and through the gallbladder into the skin and soft tissue of the abdominal wall." (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 100.) The ALJ determined that Bailey "has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 416.1567(a) and 416.967(a) with a sit/stand option; never kneeling, crouching or crawling; occasional use of ramps/stairs; avoid all exposure to hazards and concentrated exposure to extreme cold, wetness, vibration; and no more than frequent use of the left upper extremity." (*Id.*)

Using the testimony of a vocational expert, the ALJ determined that Bailey would not be able to perform his past relevant work, but considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Bailey can perform, including jobs as a hand packager, production inspector, and garment folder. (Tr. at 102–03.) The ALJ concluded his findings by stating that Plaintiff "has not been under a disability,

as defined in the Social Security Act, from July 15, 2007, through the date of this decision." (*Id.* at 103.)

## II.    Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against

the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "[d]espite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III.   Discussion.

Mr. Bailey alleges that the ALJ's decision should be reversed and remanded for two reasons. First, he contends that the ALJ's RFC finding was not based on substantial evidence because the ALJ did not consider a medical source statement ("MSS") when making his determination. Second, he contends that the ALJ's RFC assessment does not comply with Social Security Rulings ("S.S.R.") 96-8p, 96-9p, and 83-12.

### A.   Whether Substantial Evidence Supports the ALJ's RFC Finding

Plaintiff's first argument is that the ALJ erred by making an RFC finding without the aid of a MSS. Specifically, Plaintiff contends that the ALJ failed to give proper accord to statements by Dr. John Lary and Dr. Prem Gulati regarding

Plaintiff's ability to engage in gainful employment.

Plaintiff's brief rightly concedes that there is no requirement that the ALJ consider a MSS when making an RFC finding. (Doc. 8 at 8.) The ALJ is only required to make sure that the record is complete, i.e., that the medical evidence and other evidence is sufficiently detailed to allow the ALJ to make a determination or decision about whether the claimant is disabled. *See* 20 C.F.R. §§ 404.1513(e), 416.913(e). Indeed, nowhere do the regulations provide that a record is incomplete if a medical source does not provide a statement regarding the plaintiff's functional limitations, or if a medical source provides such a statement to which the ALJ properly accords little or no weight. In fact, the regulations provide just the opposite: "the lack of [a] medical source statement will not make the report incomplete." 20 C.F.R. § 404.1513(b)(6). Accordingly, Plaintiff's argument that the ALJ erred by failing to consider a MSS is clearly unavailing.

"[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). *See also* 20 C.F.R. § 404.1512(a) ("[Y]ou must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) . . . ."); 20 C.F.R. § 404.1512(c) ("You

must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled."). Plaintiff has failed to carry his burden.

Plaintiff only identifies two items of evidence in the record which he alleges should have been given greater weight when determining his disability. The first is the medical records of one-time consultive examiner, Dr. Lary. Plaintiff was examined by Dr. Lary on May 5, 2008, approximately 10 months following his first gunshot injuries. During his visit with Dr. Lary, Plaintiff complained of right leg pain, and Dr. Lary noted that Plaintiff walked with a limp. (Tr. at 275.) However, Dr. Lary noted that none of Plaintiff's joints were enlarged, swollen, red, warm, tender, or deformed, and that he had good muscle strength. (*Id.* at 275–76.) At the end of his evaluation, Dr. Lary opined that Plaintiff was impaired in his ability to stand, walk, lift, carry, bend, kneel, and squat, but was unimpaired in his ability to sit, reach, and manipulate small objects. (*Id.* at 276.)

A short time after Plaintiff met with Dr. Lary, he met with a state agency physician, Dr. Robert Heilpern. Dr. Heilpern reviewed the evidence of record, including Dr. Lary's opinion. (Tr. at 296–303.) Although Dr. Heilpern did recognize some functional limitations, he opined that the limitations identified by Dr. Lary were

inconsistent with his objective findings on examination. (*Id.* at 302.) Dr. Heilpern found that Plaintiff could occasionally lift and/or carry up to 50 pounds, frequently lift and/or carry up to 25 pounds, and stand or sit for about 6 hours in an 8-hour workday. (*Id.* at 297.) Ultimately, Dr. Heilpern assessed that Plaintiff could perform medium-level work with no climbing of ladders, ropes, or scaffolds or exposure to hazards. (*Id.* at 297–98, 300.) Dr. Heilpern further noted Plaintiff was not compliant with treatment, and he opined that his condition would improve within 12 months of the alleged onset date. (*Id.* at 298.)

The opinion of a one-time examiner is not entitled to the same degree of deference as a treating physician. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). This is particularly true when the one-time examiner's opinion is contradicted by other medical evidence. *Wainwright v. Comm'r of Soc. Sec. Admin.*, 06-15638, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007). Here, the ALJ acted appropriately in not basing his RFC assessment on the medical statements by Dr. Lary. Dr. Lary was a one-time consultive examiner and his opinion was contrary to the opinion provided by Dr. Heilpern.

Furthermore, Dr. Heilpern's finding that Plaintiff had failed to comply with prescribed treatment also finds support in the record. On August 15, 2007, one month

after Plaintiff's first set of gunshot wounds, he met with a treating physician, Dr. Ginger Bryant. (Tr. at 271.) During that visit, Plaintiff complained about decreased motion and pain in his right knee, and an infection in his thigh. (*Id.*) Dr. Bryant prescribed antibiotics to combat the infection and referred Plaintiff to physical therapy to increase his mobility. (*Id.*) Dr. Bryant indicated that she believed Plaintiff would be "full weightbearing" in four weeks if he followed the physical therapy protocol. (*Id.*)

Plaintiff did not present any evidence that he complied with the suggested physical therapy. Indeed, although Dr. Bryant directed Plaintiff to return for a follow-up visit six weeks later, it does not appear that Plaintiff ever returned. The Commissioner may deny benefits for the failure to follow treatment when the claimant, without good reason, fails to follow a prescribed course of treatment that could restore the ability to work. *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990). Again, Plaintiff bears the burden of establishing that he is disabled. *Ellison*, 355 F.3d at 1276. Thus, Plaintiff's failure to demonstrate that he followed doctor recommendations can be weighed against him.

Plaintiff next contends that the ALJ failed to accord proper weight to the opinion of Dr. Gulati. Plaintiff argues that "Dr. Gulati could not have been clearer about his opinion that at this time [Plaintiff] will not be able to do any gainful

employment." (Doc. 8 at 8.) As an initial matter, opinions regarding whether a claimant can engage in gainful employment "are not medical opinions, . . . but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c). Accordingly, it was entirely proper for the ALJ to reject Dr. Gulati's opinion that Plaintiff was unable to hold a meaningful job because this question was reserved for the Commissioner. The ALJ has the responsibility of determining whether Plaintiff was able to work, and therefore, Dr. Gulati's opinion regarding the issue was not entitled to special significance or controlling weight. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

Additionally, the ALJ sufficiently articulated credible reasons for discounting Dr. Gulati's opinion. Dr. Gulati performed his one-time consultive examination on March 24, 2009, which was less than a month after Plaintiff sustained his second set of gunshot wounds. As the ALJ noted in his decision, this was clearly too soon for a determination to be made regarding whether Plaintiff would make a full recovery. (Tr.

at 101.) Furthermore, even Dr. Gulati opined that Plaintiff would likely be able to perform sitting jobs after recovering from the wounds. (*Id*. at 306.)

Additionally, the ALJ appropriately deferred to the to the medical records of Plaintiff's treating physician, Dr. Michael Samotowka. (Tr. at 101–02.) Dr. Samotowka examined Plaintiff on several occasions after his second set of gunshot wounds, and he noted that Plaintiff had managed to recover nicely. On April 16, 2009, Dr. Samotowka recorded that Plaintiff was "doing quite well" and had managed a "good recovery." (*Id*. at 307.) On May 13, 2009, Dr. Samotowka noted that Plaintiff has some abdominal soreness, but otherwise his recovery was "excellent." (*Id*. at 320.) Moreover, Dr. Samotowka acknowledged that Plaintiff was seeking disability, but suggested that he "probably won't qualify as he should be fully recovered in less than 6 months from the time of his injury." (*Id*.) Plaintiff's last visit to Dr. Samotowka occurred on July 15, 2009, 5 months after suffering his second gunshot wound. At that visit, Dr. Samotowka assessed a full recovery and discharged Plaintiff from his care. (*Id*. at 319.)

In consideration of the foregoing, the Court concludes that Plaintiff failed to satisfy his burden of establishing that he is disabled. The ALJ had sufficient evidence before him to make a fully informed disability determination, and his decision

regarding Plaintiff's RFC was supported by substantial evidence.

**B.   Whether the ALJ's RFC Assessment Complied with the Social Security Regulations**

Plaintiff's second argument is that the ALJ's decision does not comply with SSR 96-8p, 96-9p, and 83-12.

S.S.R. 96-8p requires a specific function-by-function analysis of a claimant's limitations or restrictions regarding work-related abilities. When making an RFC determination, the ALJ's first step is to identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945. The physical functions taken into consideration in assessing an individual's RFC include "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)." 20 CFR §§ 404.1545(b); 416.945(b). Because the RFC is a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities," the ALJ must make the assessment based on all of the relevant evidence, including:

> medical history, medical signs and laboratory findings, the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to

> routine, side effects of medication), lay evidence, recorded observations, medical source statements, effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured living environment, and work evaluations, if available.

S.S.R. 96-8p at 4-5. Once the functional limitations or restrictions and work-related abilities are determined, the RFC can "be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." S.S.R. 96-8p at 1.

A review of the record indicates that the ALJ made a proper function-by-function analysis before determining Plaintiff's RFC. The ALJ considered multiple evaluations by Plaintiff's doctors, a consultative physical examination, and a physical RFC evaluation before concluding that Plaintiff was capable of performing sedentary work that allows for a sit/stand option. (Tr. at 101–02.) Plaintiff's argument, however, is not that the ALJ failed to follow the standard procedure under S.S.R. 96-8p. Rather, Plaintiff argues that the ALJ erred in designating him as capable of doing sedentary work with a sit/stand option. Plaintiff contends that "sedentary work," as defined in S.S.R. 83-10, requires the ability to be on one's feet for 2 hours and sit for 6 hours. Thus, Plaintiff argues sedentary work is, by definition, inconsistent with a sit/stand option, which requires the person to be able to sit or stand at will.

The fact that Plaintiff's sitting and standing limitations do not fit neatly within

the sedentary work category, to the extent this is true, does not automatically render the ALJ's RFC determination invalid. The problem is addressed in S.S.R. 83-12:

> In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, [a Vocational Expert's] assistance is advisable for these types of cases.

To the extent Plaintiff's exertional ranges of work fall somewhere between sedentary and light work, it was appropriate for the ALJ to rely upon a Vocational Expert ("VE") to make an individualized determination of Plaintiff's ability to secure employment. The ALJ proposed hypothetical questions to the VE regarding the number of jobs available in the national economy for Plaintiff to perform. (Tr. at 74–76.) Although the ALJ discussed sedentary and light exertional levels, he articulated Plaintiff's specific limitations for the VE to consider, and the VE made an individualized assessment of Plaintiff's ability to secure employment. (*Id.*) Based on the Plaintiff's specific restrictions, the VE determined that there were jobs in the state and national market which Plaintiff could perform, including positions as a hand packager and garment folder. (*Id.* at 75–76.) Thus, even if the sit/stand option is not consistent with sedentary work, the ALJ's reliance on a VE prevents his RFC determination from being in error. The ALJ made a proper function-by-function

analysis, and his determination that Plaintiff is capable of performing sedentary work with a sit/stand option is supported by substantial evidence.

Plaintiff's next argument is that the ALJ's decision is inconsistent with S.S.R. 96-9p. Plaintiff argues that "SSR 96-9p recognizes that an RFC for less than a full range of sedentary work reflects very serious limitations and is expected to be relatively rare." (Doc. 8 at 12.) Although this is true, SSR 96-9p explicitly provides that "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of 'disabled.'" Rather, "consideration must still be given to whether there is other work in the national economy that the individual is able to do, considering age, education, and work experience." S.S.R 96-9p at 1. Even if the ALJ's RFC finding reflects a serious limitation, the Court cannot say that the ALJ erred as a matter of law. The ALJ appropriately considered the testimony from a VE in determining that there were a sufficient number of jobs in the national economy for Plaintiff to perform. Accordingly, the ALJ satisfied his obligations under S.S.R. 96-9p.

IV.  **Conclusion**.

Upon review of the administrative record, and considering all of Mr. Bailey's arguments, the Court finds the Commissioner's decision is supported by substantial

evidence and in accord with the applicable law.  A separate order will be entered.

Done this 11th day of February 2013.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[170956]